ESHIPPING, LLC,

           Plaintiff,

    v.                                                  Case No. 24-C-683

FOCUSED TRANSPORT SOLUTIONS, LLC,
ANNETTE CADY,
KELSIE PETERSON, and
GINGER BURNINGHAM,

           Defendants.

## ORDER AND DECISION GRANTING DEFENDANTS' MOTION TO DISMISS

On May 31, 2024, Plaintiff eShipping, LLC, commenced this action for money damages and injunctive relief against Defendants Focused Transport Solutions, LLC (FTS), Annette Cady, Kelsie Peterson, and Ginger Burningham. Plaintiff alleges Defendants violated 49 U.S.C. § 14916 for providing interstate brokerage services without authorization. Plaintiff also brings separate state law and common law claims against Defendants or subsets thereof for misappropriation of trade secrets, breach of contract, and tortious interference with contracts and business relationships. On August 1, 2024, Defendants moved to dismiss Plaintiff's First Claim for Relief, violation of 49 U.S.C. § 14916(a), for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' motion will be granted.

### LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Federal Rule of Civil Procedure 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the standard for meeting this requirement, emphasizing the need for something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Something more is required than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), before the doors to expensive and time-consuming discovery will be opened. While a court must accept as true the allegations of fact, the same is not true of legal conclusions. *Id.*; *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff is a third-party logistics provider. Compl. ¶ 11, Dkt. No. 1. As a third-party logistics provider, Plaintiff provides distribution-chain management services, or brokerage services, to manufacturers and wholesalers. *Id.* ¶ 11. Specifically, Plaintiff's services include scheduling "intrastate shipping services, matching customers' loads with freight carriers, negotiating shipping rates, scheduling pickup and delivery, tracking shipments, sending bills of lading, processing carrier invoices, handling expedited deliveries, and resolving disputes and claims." *Id.* ¶ 12. One of Plaintiff's most lucrative customers in Wisconsin was Ammo, Inc. (Ammo). *Id.* ¶ 21. Plaintiff's dealings with Ammo generated revenues over $2 million in 2023. *Id.*

Defendant FTS is a newly formed third-party logistics provider that also provides brokerage services. *Id.* ¶ 23. Cady was previously employed as Plaintiff's Senior Customer Service Specialist, which provided her the opportunity to develop close relationships with

2

Plaintiff's customers. *Id.* ¶¶ 18–20. Cady, together with Peterson and Burningham, created and are officers of FTS. *See id.* ¶¶ 54–56. Shortly after FTS's inception on February 29, 2024, FTS solicited Ammo for its business. *Id.* ¶¶ 23, 27. On March 11, 2024, Ammo provided FTS with a Letter of Authority—a document that allowed FTS to negotiate shipping rates with freight carriers on Ammo's behalf. *Id.* ¶ 29. On April 19, 2024, Ammo informed Plaintiff that it would be moving to a new third-party logistics provider, namely, FTS. *Id.* ¶¶ 34–36.

FTS was not legally permitted to provide interstate brokerage services. Federal law requires that persons wishing to provide interstate brokerage services (1) register with the Secretary of Transportation pursuant to 49 U.S.C. § 13904, and (2) file financial security with the Secretary of Transportation pursuant to 49 U.S.C. § 13906. *See* 49 U.S.C. § 14916(a). FTS was not registered with the Secretary of Transportation, and therefore was in violation of 49 U.S.C. § 14916. Compl. ¶ 43, Dkt. No. 1. Plaintiff asserts that had Ammo known FTS was not a registered broker, Ammo would not have given FTS a Letter of Authority. *Id.* ¶ 46. Consequently, Plaintiff contends, with no Letter of Authority in hand, freight carriers would not have negotiated with FTS for scheduling of Ammo shipments, nor would freight carriers have disclosed customer-specific pricing for Ammo to FTS. *Id.* ¶ 47. Continuing further, Plaintiff concludes that absent FTS's unlawful brokerage, Ammo would have continued using Plaintiff's services and would not have switched providers to FTS. *Id.* ¶ 50. Plaintiff seeks to enjoin FTS from continuing to provide unlawful brokerage services, and asks for damages sustained as a result of FTS's unlawful brokerage activity.

While Plaintiff brings five Claims for Relief, Defendants only seek to dismiss Plaintiff's claim brought under 49 U.S.C. § 14916 (First Claim for Relief). *See* Dkt. No. 11. Generally

3

speaking, Defendants argue that Plaintiff does not have standing to bring suit under 49 U.S.C. § 14916.  The court agrees, so Plaintiff's First Claim for Relief will be dismissed.

## ANALYSIS

It is unclear to the court whether Defendants intend to challenge Plaintiff's Article III standing, statutory standing, or both.  Article III standing is, of course, jurisdictional.  The terms "statutory," or "prudential" standing, have been used to refer to "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (cleaned up).  The question of whether one has statutory standing is not truly one of Article III standing since the absence of a valid cause of action does not implicate subject-matter jurisdiction.  *Id.* at 128 n.4.  Defendants filed their motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, not Rule 12(b)(1) for lack of subject-matter jurisdiction.  But in briefing, Defendants continually cite to caselaw interpreting the Article III case-or-controversy requirement.  *See* Defs.' Br. in Supp., Dkt. No. 12.  If Defendants do seek to challenge Plaintiff's Article III standing, it is unclear whether that challenge is facial or factual.  *See Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015); *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Regardless of whether Defendants intend to challenge Plaintiff's Article III standing, the court is nonetheless obligated to confirm "that the litigants have Article III standing."  *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 501 (7th Cir. 2024) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006)).  And given this case is in the infant stages of litigation, the court construes any challenge to Plaintiff's Article III standing as a facial one.  *See Silha*, 807 F.3d at 173–74 (describing the difference between facial and factual challenges and adopting the *Twombly-Iqbal* "plausibility" standard—which is the same standard for deciding a 12(b)(6)

4

motion—for assessing facial challenges). Because the court finds Plaintiff does not have Article III standing to bring its claim under 49 U.S.C. § 14916, the court cannot reach the issue of statutory standing. *DaimlerChrysler Corp.*, 547 U.S. at 341 ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so.").

Article III of the United States Constitution limits judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). One "landmark" of the case-or-controversy requirement is the doctrine of standing. *Lujan*, 504 U.S. at 560. The Supreme Court has established that the "irreducible constitutional minimum of standing" contains three elements: (1) injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) traceability—the injury has to be fairly traceable to the challenged action of the defendant; and (3) redressability—it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560–61; *Spokeo v. Robins*, 578 U.S. 330, 338 (2016); *Pit Row, Inc.*, 101 F.4th at 501. "The party invoking federal jurisdiction bears the burden of establishing these elements," and "each element must be supported in the same way as any other mater on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561 (citing other sources). Further, "'a plaintiff must demonstrate standing for each claim that it presses' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (cleaned up) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Plaintiff has not established each element of standing for its 49 U.S.C. § 14916 claim.

To begin, Plaintiff has demonstrated it suffered an injury in fact. By way of reasonable inference, Plaintiff alleges it lost business and associated profits. *See* Compl. ¶¶ 11, 34–36, Dkt.

No. 21. "'[M]onetary harms' are among the 'most obvious' kinds of injury in fact." *Pit Row, Inc.*, 101 F.4th at 501 (quoting *TransUnion LLC*, 594 U.S. at 425). Skipping to the third element, redressability, a favorable decision by this court will redress Plaintiff's injury. Plaintiff seeks actual damages and injunctive relief. Compl., Dkt. No. 1. Both of these remedies are sufficient to "affect the behavior of the defendant towards the plaintiff, and thus independently provide redress." *Id.* (quoting *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021)). Plaintiff, however, falls short in demonstrating the second element, traceability.

Demonstrating traceability does not require a plaintiff to show the defendant's conduct was the most immediate cause, or even the proximate cause of the plaintiff's harm. *Lexmark*, 572 U.S. at 134 n.6. Rather, Plaintiff need only demonstrate a "meaningful connection" between the "unlawful conduct and the alleged injury." *Id.* at 502 (first quoting *Dep't of Ed. v. Brown*, 600 U.S. 551, 568 (2023) (cleaned up); and then *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). But demonstrating a meaningful connection becomes more difficult when a third party enters the picture. *See California v. Texas*, 593 U.S. 659, 675 (2021) (citing *Lujan*, 504 U.S. at 562). Where a third-party exercises "unfettered discretion with respect to the plaintiffs," courts have found the element of traceability to be lacking. *Segovia v. United States*, 880 F.3d 384, 389 (7th Cir. 2018); *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).

Here, Plaintiff seeks to forge a causal chain between FTS's violation of 49 U.S.C. § 14916 and Plaintiff's loss of revenues. But Plaintiff has failed to allege facts sufficient to do so. A necessary causal link will remain broken because of Ammo's "unfettered discretion" in deciding with whom it does business. Stated differently, even accepting that FTS violated 49 U.S.C. § 14916 by operating as an unregistered broker, Ammo was the ultimate decision maker, and it was Ammo's independent conduct that caused the harm for which Plaintiff seeks to recover. *See*

6

*Segovia*, 880 F.3d at 388 (holding former Illinois residents who did not receive absentee ballots did not have standing to sue the federal government because the State of Illinois, not the federal government, decided who to send absentee ballots to); *Simon*, 426 U.S. at 41–42 (holding indigent patients who were denied non-emergency care lacked standing to challenge IRS rule that may have incentivized denial of care because the hospital, not the IRS, ultimately decided which patients to treat); *see also Haymarket DuPage, LLC v. Vill. of Itasca*, No. 22-CV-160, 2024 WL 809110, at *15 (N.D. Ill. Feb. 27, 2024).

Plaintiff attempts to rebut this conclusion by asserting that had Ammo known FTS was unregistered, Ammo would have remained in business with Plaintiff. The Supreme Court has been "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors," *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013), but it has recognized that a plaintiff may be able to assert standing if it can show that a third-party is likely to react in a predictable way, *California v. Texas*, 593 U.S. at 675 (2021); *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Here, however, Plaintiff's allegations only speculate about how Ammo would have acted. Plaintiff does not allege any underlying facts; instead, resting on one conclusory allegation: "Upon information and belief, Ammo would not have issued FTS a Letter of Authority to broker interstate shipping on its behalf had it known that FTS's brokerage services were unlawful." Compl. ¶ 46, Dkt. No. 1. But why would Ammo have declined to do business with FTS? Plaintiff does not say.

Plaintiff asserts that the court "must presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Pl.'s Br. in Opp. at 7, Dkt No. 13 (quoting *Lujan*, 504 U.S. at 561). Not so. "[B]are and conclusory allegations . . . are insufficient to state a claim." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (citing *Iqbal*,

7

556 U.S. at 678, 680); *Blanco v. Bath & Body Works, LLC*, No. 1:22 CV 01207, 2022 WL 1908980, at *2 (N.D. Ill. June 3, 2022). And "facial plausibility means 'enough to raise a right to relief above the speculative level.'" *Id.* at 588 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff may believe that Ammo would not have moved its business to FTS, but the Complaint does not allege any facts explaining why Ammo would not have issued FTS a Letter of Authority even if it had known FTS was unregistered. In *Overton v. Uber Technologies, Inc.*, 333 F. Supp. 3d 927 (N.D. Cal. 2018), the case Plaintiff principally relies upon, the plaintiffs alleged that failing to comply with the registration requirements for carriers under the FMCA gave Uber a competitive advantage. *Id.* at 946. No such allegation appears here. In short, Plaintiff alleges a traceability theory that is possible, but does not allege facts to tip the scale to plausible. *But cf. Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 392 (5th Cir. 2024) (determining third-party physicians were likely to react in a predictable way because they were required to choose between "self-censorship" or "professional self-immolation"). For these reasons, Plaintiff's 49 U.S.C. § 14916 claim must be dismissed. Plaintiff does not have Article III standing; the court does not have subject-matter jurisdiction over that claim.

## CONCLUSION

For these reasons, Defendants' motion to dismiss Plaintiff's First Claim for Relief for failure to state a claim (Dkt. No. 11) is **GRANTED**. The dismissal is without prejudice, however. Plaintiff will be allowed thirty days from the date of this order to file an amended complaint curing the defects noted herein. If no amended complaint is filed within the time allowed, the claim will be dismissed with prejudice. If Plaintiff files an amended complaint alleging facts showing

Plaintiff has standing to assert a claim under 49 U.S.C. § 14916, Defendants may renew their motion to dismiss for failure to state a claim under Rule 12(b)(6).

**SO ORDERED** at Green Bay, Wisconsin this 30th day of October, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge